UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE TROY CARTAGENA,

                                  Plaintiff,

                                                                       Case # 18-CV-245-FPG

v.

                                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

## INTRODUCTION

Plaintiff George Cartagena brings this action pursuant to the Social Security Act seeking review of the denial of his Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 13. For the reasons that follow, the Commissioner's motion is GRANTED and Cartagena's motion is DENIED.

## BACKGROUND

On October 14, 2014, Cartagena protectively filed an application for SSI. Tr. 195.[1] He alleged that he had been disabled since October 1, 2010 due to obesity, a leg and back condition, cellulitis, and arthritis Tr. 218, 222. On May 23, 2017, Cartagena and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Maria Herrero-Jaarsma ("the ALJ"). Tr. 63. On August 2, 2017, the ALJ issued an unfavorable decision. Tr. 20. On January 18, 2018, the Appeals Council denied Cartagena's request for review. Tr. 1. This action seeks review of the Commissioner's final decision. ECF No. 1.

---

[1] "Tr." Refers to the administrative record in this matter.

1

# LEGAL STANDARD

## I. District Court Review

When a court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 416.909. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

**I.     The ALJ's Decision**

At step one, the ALJ found that Cartagena had not engaged in substantial gainful activity since the application date. Tr. 22. At step two, the ALJ found that Cartagena had several severe physical impairments, including morbid obesity and arthritis in both knees, as well as anxiety. At step three, the ALJ found that none of Cartagena's impairments met or medically equaled the criteria of any Listings impairment and determined Cartagena's RFC. Tr. 23-35. At step four, the ALJ noted that Cartagena has no past relevant work, and at step five, he found that Cartagena can

adjust to other work that exists in significant numbers in the national economy. Tr. 35-37. Accordingly, the ALJ found Cartagena not disabled. Tr. 37.

**II. Analysis**

Cartagena argues that remand is required because the ALJ failed to properly analyze whether the combination of his obesity and his bilateral knee arthritis medically equaled Listing 1.02, the ALJ's conclusion that he could perform sedentary work while using a cane for ambulation is not supported by substantial evidence, the ALJ violated the treating physician rule, the ALJ erred by omitting a reaching limitation from his RFC determination, and the ALJ erred in assigning little weight to the opinion of Cartagena's treating mental health counselor.

For the following reasons, the Court rejects Cartagena's arguments, DENIES his motion for judgment on the pleadings, and GRANTS the Commissioner's motion for judgment on the pleadings.

**A. Step Three Analysis**

Cartagena first argues that the ALJ failed to properly analyze whether the combination of his obesity and his bilateral knee arthritis medically equaled Listing 1.02. Listing 1.02 requires major dysfunction of a major peripheral weight-bearing joint resulting in the inability to ambulate effectively as defined in Listing 1.00B2b. 20 C.F.R. § 404, Subpart P, App'x 1, § 1.02. Listing 1.00B2b, in turn, defines the inability to ambulate effectively as "an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Section 1.00B2b provides examples of ineffective ambulation, including: the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory

4

activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

Cartagena argues that the ALJ failed to discuss his ability to ambulate effectively at step three, and that the record shows that he cannot ambulate effectively. The Court disagrees.

Admittedly, the ALJ's discussion of Listing 1.02 is brief and the evidence she cited regarding Cartagena's ability to ambulate is mixed. Tr. 23. For instance, a report from Cartagena's May 2015 consultative examination with Donna Miller, M.D., indicated that Cartagena had a wide based gait, was unable to walk on his heels and toes, and had some decreased range of motion of the lumbar spine, hips, and knees. Tr. 23, 424. But Dr. Miller also reported that Cartagena's joints were stable and non-tender; there were no evident subluxations, contractures, ankylosis, or thickening; there was no redness, heat, swelling, or effusion; and Cartagena had a normal stance, did not use an assistive device, and was able to rise from a chair without difficulty. Tr. 23, 424.

However, within her RFC discussion, the ALJ cited additional evidence regarding Cartagena's ability to ambulate. The evidence indicated that:

- In December 2015, Cartagena began treating with John Sauret, M.D. Dr. Sauret indicated that Cartagena walked with a normal gait without using an assistive device. Tr. 29, 431.

- In March 2016, Dr. Sauret reported a normal gait, recommended that Cartagena change his diet, and advised him to walk for 30 minutes five to seven days a week. Tr. 428-29.

- In May 2016, Dr. Sauret prescribed Cartagena a cane. Tr. 567.

- Dr. Sauret referred Cartagena to a specialist at UB MD Orthopaedics & Sports Medicine ("UBMD") for knee injections, and in September 2016, UBBD communicated to Dr. Sauret that Cartagena had reported that the injections were helping, his stamina was improving, he was walking farther, he was intentionally taking the stairs more, and he was walking his dog for exercise. Tr. 475, 478.

- In October 2016, Cartagena saw Dr. Sauret after losing his balance and falling while getting out of bed, but Dr. Sauret still observed a normal gait and continued advising Cartagena to walk 30 minutes for five to seven days a week. Tr. 462-64.

5

- In November 2016, Cartagena told Dr. Sauret that he felt better after receiving his knee injections, he continued to lose weight, he had no new complaints, and he had a normal gait. Tr. 462-64.

- In February 2017, Cartagena saw Dr. Sauret after he fell down the stairs, but he nevertheless reported that he felt well, had no complaints, and had lost more weight. Tr. 489-90. Dr. Sauret observed a normal gait, indicated that Cartagena ambulated without an assistive device, and noted that, despite his fall, he did not have a history of frequent falls and was not considered a fall risk. Tr. 489-90.

- In May 2017, Dr, Sauret completed a medical source statement in which he opined that Cartagena had a "limited ambulatory capacity," but also found that he could stand/walk for a total of two hours in a workday and could walk a block without rest or severe pain. Tr. 30-31, 628-29.

The Court is thus satisfied that the ALJ considered the totality of the record when evaluating Cartagena's ability to ambulate at step three.

Further, the record evidence is consistent with effective ambulation for purposes of Listing 1.02. Specifically, Cartagena needed only one cane, not two. Although he fell down the stairs in February 2017, when he visited Dr. Sauret after the fall, he reported that he felt well and had no complaints, his examination was unremarkable, and he had lost weight. Tr. 23, 30. In May 2017, although Dr. Sauret opined that Cartagena had limited ambulatory capacity, he also opined that Cartagena could walk one block without resting or experiencing severe pain. Tr. 31, 629. Additionally, at the hearing, Cartagena testified that he could walk a couple doors down to his sister's house without difficulty when using his cane. Tr. 93.

Accordingly, based on all of the record evidence, the Court finds no error in the ALJ's step three analysis.

**B. Use of a Cane**

Next, Cartagena argues that the ALJ's conclusion that he could perform sedentary work with the use of a cane for ambulation is not supported by substantial evidence because the ALJ

failed to appreciate that he needs the cane not only for ambulation, but for balance. The Court disagrees.

The SSA distinguishes between the use of a cane for ambulation versus for balance. SSA Ruling 96-9p explains that, since most unskilled sedentary work requires only occasionally lifting and carrying light objects, an individual who requires a cane for ambulation may still be able to perform these minimal lifting and carrying requirements. SSR 96-9p, 1996 WL 374185, at *7. "On the other hand, the occupational base for an individual who must use [a cane] for balance . . . may be significantly eroded." *Id.*

Here, for the same reasons explained above, the Court is satisfied that the ALJ considered the record as a whole when evaluating Cartagena's ability to ambulate. After doing so, the ALJ determined in his RFC that Cartagena required a cane to ambulate. Cartagena's contention that he needs the cane for balance may be his interpretation of the evidence, but where substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

Moreover, even if Cartagena does need the cane for balance, he is not necessarily precluded from performing sedentary work. Even though SSR 96-9p indicates that the use of a cane for balance *may* erode the sedentary occupational based, at least one court has found that the use of a cane for balance is consistent with the ability to perform sedentary work. *See Johnson v. Comm'r of Soc. Sec.*, No. 18-CV-0507-MJR, 2019 WL 3406610, at *5 (W.D.N.Y. July 29, 2019) (holding that ALJ did not err in finding that claimant who was prescribed cane for balance, weightbearing, and pain could perform sedentary work). And, at the hearing, Cartagena's counsel specifically asked the VE questions about the use of a cane for balance, not just ambulation, and the VE testified that certain jobs would still be available. Tr. 105-06.

Accordingly, the Court finds no error in the ALJ's RFC determination with respect to the cane limitation.

C. **Treating Physician Rule**

Cartagena next argues that the ALJ violated the treating physician rule by assigning partial weight to the opinion of Dr. Sauret, who treated Cartagena five times over the course of a year and a half, while assigning moderate weight to the opinion of the consultative examiner, Dr. Miller, who examined Cartagena only once.

Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Here, Cartagena does not argue that the ALJ's discussion of Dr. Sauret's opinion lacked the requisite good reasons; in fact, he acknowledges that the ALJ found Dr. Sauret's opinion to be inconsistent with other record evidence. *See Heil v. Comm'r of Soc. Sec.*, No. 16-CV-6653-FPG, 2017 WL 5467714, at *5 (W.D.N.Y. Nov. 14, 2017) (finding that the ALJ provided the requisite "good reasons" for discounting a treating source's opinions where she found the opinions generally inconsistent with objective findings in the record and with the source's own physical

examinations). Rather, Cartagena argues that the ALJ failed to properly analyze Dr. Sauret's opinion for consistency with Dr. Miller's and UBMD's physical findings.

However, Dr. Miller made no findings as to Cartagena's ability to walk, sit, or stand. At most, she found a reduced range of motion in his knees due to obesity but noted that he was able to rise from his chair without difficulty. Tr. 424-25. She opined that Cartagena had a moderate limitation with heavy lifting, bending, carrying, reaching, pushing, pulling, kneeling, and squatting. Tr. 426. Nothing in Dr. Miller's opinion specifically bolsters Dr. Sauret's opinion.

Further, no source from UBMD rendered a medical opinion. Cartagena cites a treatment note from UBMD indicating that he had an antalgic gait and joint tenderness. Tr. 472-474. But it is not clear how this note helps Cartagena's argument that the ALJ should have given more weight to Dr. Sauret's opinion because it is inconsistent with Dr. Sauret's repeated findings that Cartagena had a normal gait.

In any case, the ALJ did not completely reject Dr. Sauret's opinion. His sedentary RFC determination incorporated Dr. Sauret's opinion that Cartagena was limited to only two hours of standing and/or walking during a workday, and, like Dr. Sauret, the ALJ limited Cartagena to lifting and carrying no more than ten pounds and never kneeling or crouching. Tr. 25, 630. While Dr. Sauret's medical source statement skipped the question of whether Cartagena needed a cane, Tr. 629, the ALJ concluded that he needed one. Tr. 25. Dr. Sauret's severely restrictive opinion that Cartagena needed hourly breaks and needed to rest 30 minutes before returning to work is not supported by his own treatment notes or by the record as a whole.

Accordingly, the Court finds that the ALJ did not violate the treating physician rule.

9

### D. Reaching Limitation

Cartagena next argues that the ALJ erred by omitting a reaching limitation from his RFC determination even though Dr. Miller opined that he had a moderate reaching limitation. The Court disagrees.

There is no record evidence supporting a reaching limitation, and Cartagena never complained of any reaching problems. It is not clear why Dr. Miller included this limitation in her medical source statement. Her examination notes indicate that Cartagena had full range of motion in his shoulder, elbows, forearms, and wrists. Tr. 425. In any case, courts have found that a moderate reaching limitation is consistent with the ability to perform even light work. *See Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (collecting cases). The Court finds no error here.

### E. Mental Limitations

Finally, Cartagena argues that the ALJ erred in assigning little weight to the opinion of Megan Denney, his treating mental health counselor. Again, the Court disagrees.

Starting in December 2015, Cartagena sought biweekly treatment for anxiety and depression at Horizons Health Services, which links patients with mental health professionals. Tr. 431. In May 2017, counselor Megan Denney completed an assessment indicating that Cartagena was seriously limited or unable to meet competitive standards in 25 out of 25 listed mental abilities and aptitudes, that he found all the demands of work stressful, and that he would likely miss more than four days of work per month. Tr. 34, 578-83. The ALJ gave this severely restrictive opinion limited weight because it was not from an acceptable medical source, and it included several signs and symptoms that were not present in examination notes. Tr. 35, 579.

Cartagena first faults the ALJ for discounting Denney's opinion on the basis that she is not an acceptable medical source. The SSA's regulations require the ALJ to "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted). And the opinion of an "other source" who regularly treats a claimant is entitled to extra consideration. *See Vishner v. Colvin*, No. 1:14-cv-00431, 2017 WL 1433337, at *5 (W.D.N.Y. Apr. 24, 2017).

However, the ALJ did not discount Denney's opinion solely because she is not an acceptable medical course. The ALJ explained that she found Denney's opinion to be inconsistent with Cartagena's testimony and treatment notes. For example, Denney listed sleep disturbance as one of Cartagena's symptoms even though by April 2017 Cartagena had gotten a CPAP machine for his sleep apnea and reported that his quality of sleep had improved. Tr. 571-71. Additionally, treatment notes from Horizons made in April, May, and June 2016 indicated that Cartagena reported "good" sleep. Tr. 442, 448, 455. Denney also listed "psychomotor agitation" as a symptom, even though no treatment notes reflect that symptom. *See* Tr. 595, 602 (showing that treatment notes list only "psychomotor retardation," which is the opposite of psychomotor agitation).

Finally, the ALJ noted that Denney's opinion was inconsistent with Cartagena's testimony. The ALJ explained that Cartagena testified that he gets frequent anxiety and panic attacks, but that he has learned breathing exercises and other coping mechanisms which are effective in calming him down and improving his symptoms. He also takes medication to control his symptoms. Tr. 27.

The Court finds that the ALJ properly analyzed Denney's opinion against the record as a whole and that the ALJ's RFC determination—which limits Cartagena to a low stress work

environment; simple, routine decisions; only occasional changes in routine, processes, and setting; and only occasional contact with coworkers and the public—is supported by substantial evidence.

## CONCLUSION

For the reasons stated, Cartagena's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, and Cartagena's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 27, 2019
       Rochester, New York

                                       HON. FRANK P. GERACI, JR.
                                       Chief Judge
                                       United States District Court